**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Componovo*, Slip Opinion No. 2021-Ohio-773.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-773

IN RE APPLICATION OF COMPONOVO.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Componovo*, Slip Opinion No. 2021-Ohio-773.]**

*Attorneys—Character and fitness—Application for admission to the practice of law without examination—Application disapproved and applicant permitted to reapply for admission without examination after one year.*

(No. 2020-1176—Submitted January 27, 2021—Decided March 17, 2021.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 773.

_____

**Per Curiam.**

{¶ 1} Applicant, William Christopher Componovo, of Wayne, Pennsylvania, is a 1993 graduate of the Widener University Delaware School of Law. In August 2019, he applied for admission to the Ohio bar without

examination.  At that time, he was already licensed to practice law in Delaware, the District of Columbia, Maryland, and West Virginia.

{¶ 2} Following a February 2020 interview by a two-member panel of the Cleveland Metropolitan Bar Association's admissions committee, the committee issued a final report recommending that Componovo be approved as to his character, fitness, and moral qualifications.  The Board of Commissioners on Character and Fitness, however, exercised its authority to sua sponte investigate the application to address apparent inconsistencies between information contained in Componovo's application and the information obtained in the character-and-fitness investigation conducted by the National Conference of Bar Examiners ("NCBE"). *See* Gov.Bar R. I (12)(B)(2)(e).

{¶ 3} In June 2020, Componovo testified at a character-and-fitness hearing before a three-member panel of the board.  Following that hearing, the board found that Componovo had not been entirely candid about certain events in his past and recommended that his pending application be disapproved and that he be permitted to reapply for admission without examination in one year.

{¶ 4} Having reviewed the record, we adopt the board's recommendation to disapprove Componovo's pending application and permit him to reapply for admission to the Ohio bar without examination in one year from the date of this order.

### Board's Report and Recommendation

{¶ 5} The board identified three areas of concern regarding Componovo's character, fitness, and moral qualifications—all of which call his honesty and candor into question.

{¶ 6} First, the board noted that there were significant discrepancies between Componovo's explanation for his December 2008 departure from the Delaware law firm of Weik, Nitsche, Dougherty & Galbraith and the explanation for the departure provided to the NCBE by the firm.  On his application,

2

Componovo stated that he had left the firm following a "disagreement over staffing issues." Then, in response to a question on his application asking whether he had "ever been disciplined, suspended, laid off, permitted to resign (in lieu of termination), or terminated from any job," he stated that he had been "[l]aid off" by the firm and then explained in more detail that "[t]he firm was named as a defendant in a suit, along with me, and after my deposition was taken the firm let me go."

{¶ 7} But in a handwritten response to an inquiry by the NCBE regarding Componovo's employment, Joseph Weik, a partner with the firm, stated:

> After being terminated for sexual harassment, Mr. Componovo obtained employment elsewhere. While at his new firm, Mr. Componovo convinced one of our staff to help him appropriate proprietary case management software from our firm that he transferred to his new firm. This resulted in a lawsuit filed against Mr. Componovo and his new firm for theft of the software. The case was dismissed after Mr. Componovo agreed to pay restitution.

{¶ 8} In response to an e-mail from the Office of Bar Admissions seeking additional information on Componovo's termination, Weik stated:

> A secretary working with Mr. Componovo came to one of the partners complaining that Mr. Componovo was sending her sexually suggestive text messages. A review of the texts showed that they were particularly vile. When confronted with the texts, Mr. Componovo admitted sending them. He was terminated that same day.

{¶ 9} The board found that Componovo's claims that his employment with the firm had ended over a disagreement about a staffing issue, that he had been "laid off," and that his employment had not been terminated until after he and the firm had been sued and he had been deposed all exhibited "a clear attempt to avoid or shade the truth regarding what happened." In addition, the board noted that Componovo told the admissions-committee interviewers that he regretted sending "unwanted" texts to a colleague. Yet at the panel hearing, he testified that he and the staff member "engaged in a flirtatious series of text messages both back and forth; they were not one-sided, it was back and forth" and that "the firm eventually got wind of it and made a decision they had to let me go." When the panel asked Componovo to explain the discrepancy between Weik's description of the text messages and his own description of them, Componovo admitted that the texts were "pretty graphic" or "vile" but he maintained that they were flirtatious and "back and forth."

{¶ 10} The board credited Componovo for his belated acknowledgment that his improper text messages had led to the termination of his employment with the firm. Nevertheless, it found that his efforts to shade the truth—particularly the contradiction between his statements at his admissions-committee interview and his testimony at his character-and-fitness hearing—reflected adversely on his veracity.

{¶ 11} The second area of concern identified by the board involved the October 2009 termination of Componovo's employment by the Delaware law firm of McCann, Schaible & Wall. In his application to the Ohio bar regarding that matter, Componovo stated, "I was sued by my former partner [from Weik, Nitsche, Dougherty & Galbraith,] who alleged that I accessed certain case management outlines that he alleged were his work product since he bought the case management system and personalized the materials. He also sued my then employer[, McCann, Schaible & Wall]." He reported that the case was "settled out of court"—but he

did not disclose that he had been required to pay money to the Weik, Nitsche, Dougherty & Galbraith firm as part of that settlement until after the Office of Bar Admissions requested clarification regarding the disposition of that case.

{¶ 12} The final concern identified by the board was Componovo's failure to disclose a civil action filed against him in the Common Pleas Court for the state of Delaware in 2001. When questioned about that case at his character-and-fitness hearing, Componovo testified that he did not recall the litigation. He did, however, acknowledge that the plaintiff in that case was a psychologist or psychiatrist who provided expert testimony in workers' compensation cases, and he speculated that the case might have involved the untimely payment of an expert-witness fee. But the panel expressed skepticism that Componovo could completely forget litigation in which he was a named party and had filed a responsive pleading.

{¶ 13} The board found Componovo's pattern of concealment to be antithetical to this court's express guidance that "[h]onesty is the cornerstone of all obligations incumbent upon members of the legal profession," *In re application of Kohler*, 115 Ohio St.3d 11, 2007-Ohio-4261, 873 N.E.2d 818, ¶ 10. It therefore recommended that his pending application for admission to the Ohio bar without examination be disapproved and that he be required to wait one year before reapplying for admission without examination.

## Disposition

{¶ 14} An applicant for admission to the Ohio bar bears the burden of proving "by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(13)(D)(1). An applicant may be approved for admission if the applicant satisfies the essential eligibility requirements for the practice of law as defined by the board and demonstrates that "the applicant's record of conduct justifies the trust of clients, adversaries, courts, and others * * *." Gov.Bar R. I(13)(D)(3). "A record manifesting a significant deficiency in the honesty,

trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval." *Id.* Indeed, "avoid[ing] or shad[ing] the truth during the character and fitness proceedings * * * constitutes a false statement or an omission" to be considered under the rules. *In re Application of Howard*, 111 Ohio St.3d 220, 2006-Ohio-5486, 855 N.E.2d 865, ¶ 9; *see also* Gov.Bar R. I(13)(D)(3)(g) and (h). Moreover, we have recognized that "[e]vidence of a candidate's having made a single false statement or having committed any act of dishonesty, fraud, deceit, or misrepresentation is enough to disqualify the application." *Kohler* at ¶ 10.

**{¶ 15}** Here, Componovo affirmatively misrepresented at least two events from his past by omitting unflattering details regarding those events on his application, entirely failed to disclose a third event on his application, and then falsely certified that he had answered all questions on his application "fully and frankly." On these facts, we agree with the board that he has failed to carry his burden of proving by clear and convincing evidence that he currently possesses the requisite character, fitness, and moral qualifications to practice law in Ohio. But as the board acknowledged in its report, Componovo has submitted references by two people attesting to his good character and abilities as an attorney, indicating that he may one day be able to carry that burden.

**{¶ 16}** Accordingly, William Christopher Componovo's pending application for admission to the Ohio bar without examination is disapproved. He may reapply for admission without examination one year from the date of this order.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

William Christopher Componovo, pro se.

Kelli Kay Perk, for the Cleveland Metropolitan Bar Association.

January Term, 2021

_____